IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Earnest E. Vaughn, Sr., ) | |
| ) | Civil Action No. 6:06-2384-HMH-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Reginald V. Widener, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant's motion for summary judgment. The plaintiff, a former state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The plaintiff has filed this action alleging that the defendant violated his constitutional rights in connection with the plaintiff's arrest on April 10, 1997. The plaintiff contends that the defendant detained him in violation of his Fourth Amendment rights. The plaintiff amended his complaint to assert allegations concerning the circumstances related to the dismissal of his charges.

On October 12, 2007, the defendant filed a motion for summary judgment. By order filed October 15, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On October 24, 2007, the plaintiff filed his opposition to the motion for summary judgment.

## BACKGROUND OF THE CASE

Defendant Widener testified that on April 10, 1997, he was employed as a deputy with the Anderson County Sheriff's Department. On that night at approximately 3:00 a.m., he was on patrol and was parked in the parking lot of a convenience store in a marked patrol cruiser. He noted that he observed the vehicle the plaintiff was in driving around the store several times. A female was with the plaintiff in the car. The defendant then observed the vehicle drive back around and pull up to a red light, where the plaintiff and the female stared over at the defendant in his patrol car. The vehicle then left the area at a fairly high rate of speed. Defendant Widener testified that he was concerned due to their behavior, as once they had seen him sitting in the patrol car, they focused on him and then left the area immediately at a fairly high rate of speed. He stated that there had been a high number of burglaries in that area, and it was a high crime area. He wanted to follow the vehicle to simply see where they were going. He had to accelerate to a higher rate of speed to catch the plaintiff's vehicle. He stated that the vehicle made several turns and then pulled into a driveway. The defendant continued past the driveway and turned down another road. He waited several minutes and then went back to the area. When he returned, he observed the plaintiff on the front porch of the house with no lights on, and the lights of the vehicle were off (Widener trial transcript, pp. 24-26).

The defendant stated that there were no lights on in the house, and it did not appear that there was anyone at home. It was approximately 3:00 a.m., and after observing the matters stated above, he decided to stop and ask the plaintiff if he knew the person who lived at the home and why he was there. He testified that he approached the plaintiff and identified himself as a police officer. He then requested identification and asked what the plaintiff and the female were doing at the residence. The plaintiff stated that he had known someone who lived at the home and had done work for them at some time, but he was able to give only a first name of the individual. He did not state any other reasons why he was at the house. When officers knocked on the door of the home, no one responded (Widener trial transcript, pp. 27-28).

Defendant Widener testified that at this point, he was also concerned potentially for his safety, as this was around 3:00 a.m. in the morning and was in a high crime area. Accordingly, he asked the plaintiff if he had any objection to being patted down for weapons. The plaintiff did not object to being patted down for weapons and volunteered that he had some knives in his pocket. When defendant Widener removed the knives from the plaintiff's pocket, a bag fell out of the pocket. The bag contained a green leafy substance that was later determined to be marijuana. The plaintiff was placed under arrest at that point for simple possession of marijuana (Widener trial transcript, pp. 28-29).

After the plaintiff was placed under arrest, he was searched incident to the arrest. The defendant found some cigarette packs in the plaintiff's coat. One of the packs contained 13 individually wrapped baggies containing a substance which was later determined to be methamphetamine. The plaintiff was then taken to the Anderson County Detention Center. Defendant Widener did not have further involvement in the case until he testified at the criminal trial in the case (Widener trial transcript, pp. 29-31).

The plaintiff also testified at his criminal trial, stating that he and his girlfriend were going out, and he was to meet a lady at a house to pick up some tools for laying carpet. He testified that they pulled into the parking lot of the convenience store and saw several patrol cars and circled around, leaving the convenience store. They then proceeded to the lady's home and decided to wait on her so that he could pick up the tools. As they were proceeding to the house, he testified that an officer, defendant Widener, got behind them. When they turned into the house, the officer went past them. He testified that the officer then turned around and came back. He testified that the officer asked him what he was doing in the neighborhood and if he had any identification. The officer then asked him if he had any weapons on him, to which the plaintiff responded he had three pocket knives in his pocket. The plaintiff also testified that he " told him that I had about a joint of pot in a baggy in the pocket with the knife." The plaintiff stated that he volunteered this information. The plaintiff testified that he was then placed under

3

arrest. He testified that he was placed in handcuffs and was put into the patrol car. He claimed defendant Widener did not find any drugs on him other than the marijuana and that he did not possess the methamphetamine  (Vaughn trial transcript, pp. 63-66).

At trial, the plaintiff was convicted of possession of marijuana and possession with intent to distribute (PWID) methamphetamine. He was sentenced to one year and a $1,000 fine on the possession charge, and 20 years and a $100,000 fine on the PWID charge. The plaintiff was released from prison in early 2005 after serving seven years of the 20-year sentence. He was released from prison after the South Carolina Supreme Court reversed his conviction on December 20, 2004, finding that his trial counsel was ineffective for failing to object to an unfair, improper prosecutorial argument during his trial. The reversal occurred as a result of the plaintiff's appeal from an unsuccessful Anderson County post-conviction relief (PCR) application. The Supreme Court remanded the case to the Anderson County Court of Common Pleas (the PCR court). According to the affidavit of Rame L. Campbell, an Assistant Solicitor in the Tenth Circuit Solicitor's Office, on remand from the South Carolina Supreme Court, the charges against the plaintiff were dismissed because (1) the officers involved in the arrest were no longer employed by the Anderson County Sheriff's Department and/or were living out of state; (2) the chemist who tested the drugs could not be located; (3) the drugs confiscated from the plaintiff's person could not be located, and it was assumed they were destroyed due to the time between the plaintiff's arrest and the Supreme Court's decision; and (4) the plaintiff had served over seven years of his sentence (Campbell aff.). The plaintiff was released from prison in February 2005.

In his initial complaint, the plaintiff sought damages from numerous individuals and entities involved in his arrest, trial, and imprisonment.  By order dated November 7, 2006, a number of defendants were dismissed by the Honorable Henry M. Herlong, Jr., United States District Judge.  The only remaining defendant is Widener.

**APPLICABLE LAW**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,*

490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## **ANALYSIS**

The plaintiff alleges that defendant Widener detained him in violation of his Fourth Amendment rights. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court made a distinction between a full-blown search and a pat down or frisk to determine if an individual has any weapons. The Court also discussed the initial inquiry such as was made with the plaintiff in this case. The Court noted that the evidence that is required to make the inquiry is not of the same degree of conclusiveness as that for an arrest. The Court went on to state:

> "The stopping of the individual to inquire is not an arrest and the grounds upon which the police may make the inquiry may be less incriminating than the ground for an arrest for a crime known to have been committed . . . . And as the right to stop and inquire is to be justified for a cause less conclusive than that which would sustain an arrest, so the right to frisk may be justified as an incident to inquiry upon grounds of elemental safety and precaution which might not initially sustain a search."

*Terry*, 392 U.S. at 11 n.5 (quoting *People v. Rivera*, 201 N.E.2d 32, 34-35 (N.Y. Ct. App. 1964)).

In *Terry*, the officer observed several men engaged in actions which by themselves were not illegal or even not out of the ordinary, but when viewed together raised his suspicion. Essentially, there were two men who were having conversation and one would then walk a short distance, turning to look into a store window, and then return to the other man at the corner. This was repeated several times each, and ultimately a third man approached them and briefly engaged with them in conversation. All the men then walked from the area. After

6

observing this behavior, the officer became suspicious, thinking that they may be involved in potential criminal activity. He approached the three men, identified himself as a police officer, and asked them for their names. When the men " mumbled something" in response to his inquiries, the officer then grabbed Mr. Terry and "spun him around so that they were facing the other two, with Terry between McFaden and the others, and patted down the outside of his clothing." *Id.* at 6-7.

As argued by the defendant, the facts in *Terry* are analogous to the present facts except that in *Terry* the officer did not request to search or ask about weapons, but simply grabbed the plaintiff, spun him around, and patted him down. In the present case, both the defendant and the plaintiff testified at trial that defendant Widener asked the plaintiff if he had any weapons, and the plaintiff responded that he did have weapons. The plaintiff testified that he also told Widener that he had marijuana in his pocket. When defendant Widener patted the plaintiff down and removed the weapons from the plaintiff's person, he found the marijuana.

After defendant Widener found the marijuana on the plaintiff, he placed him under arrest and searched the plaintiff incident to the arrest. During the search incident to arrest, the defendant found on the plaintiff 13 individually wrapped baggies containing a substance which was later determined to be methamphetamine. Based on the analysis in *Terry*, the initial inquiry and pat down of the plaintiff complied with the Fourth Amendment. Further, the defendant clearly had probable cause to place the plaintiff under arrest for possession of the marijuana and to search the plaintiff incident to that arrest. Accordingly, the plaintiff's Fourth Amendment claims fail.

In his amended complaint (doc. no. 99), the plaintiff claims that he learned on August 15, 2007, that the charges against him were listed as "nol prossed"[1] rather than "dismissed." Without stating any facts or how defendant Widener was involved, he claims the

---

[1] *Nolle prosequi* is the voluntary withdrawal by the prosecuting attorney of present proceedings on a criminal charge. *Black's Law Dictionary* 1048 (6th ed. 1990).

7

defendant conspired with "court officials" to nol pros the charges in an effort to deny him adequate and meaningful access to the courts, the right to a fair trial by a jury, and the right to due process and equal protection of the law. The plaintiff does not explain how the distinction between "dismissal" and "nol pros" has deprived him of these rights. Defendant Widener submitted an affidavit in support of his motion for summary judgment in which he stated that he left the Anderson County Sheriff's Department in 1998. He went into the military for three years and was stationed in Louisiana while in the military. He left the military in approximately 2001 and went to Georgia and has lived there since that time. He has not been employed with and has had no involvement with any law enforcement agency since 1998. He further stated he had no knowledge the plaintiff's conviction had been overturned until receiving the lawsuit from the plaintiff. He had no involvement in the decision to nol pros or dismiss the charges against the plaintiff and was not aware this occurred (Widener aff.). The plaintiff sets forth no evidence whatsoever in support of his claims. Based upon the foregoing, the plaintiff's allegations fail to state a claim.

The defendant also argues that he is entitled to qualified immunity as his conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff has failed to demonstrate that the defendant violated any of his constitutional rights. Therefore, the defendant is entitled to qualified immunity.

Should the complaint be construed to allege claims under state law, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims. *See* 28 U.S.C. §1367(c).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment (doc. no. 118) be granted. Any pending nondispositive motions will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot.

s/William M. Catoe
United States Magistrate Judge

February 8, 2008

Greenville, South Carolina

9